ELLIS, Judge.
This is an expropriation suit by which the State of Louisiana, through The Department of Highways, expropriated under the provision of LSA-R.S. arts. 48:441-48:460, Section 19.1 of Article 6 of the Constitution of Louisiana of 1921, 3.527 acres of land in Tangipahoa Parish bounded east by Highway 51 a distance of 488 feet, south by Lake Maurepas, west by a narrow un-expropriated parcel owned by the defendants but covered by the waters of the borrow canal, and north by private owners.
The defendants had spent quite a considerable sum in raising the level of this ground by fill and by $2,000 worth of shells, and had also riprapped that portion of the land bounded by Lake Maurepas in order to protect it from wave damage. The defendants then had built a restaurant and bar with small living quarters above. The property also contained other improvements which will be discussed hereinafter.
In accordance with the requirements of the law, supra, the State had the property appraised by two expert appraisers and realtors, who estimated the value of the property to be $67,000 and this was the amount which was deposited in the registry of the District Court.
The defendant in its answer sets up values totalling $296,845.
After trial of the case, the District Court awarded $88,355 or $21,935 more than the deposit made by the State.
From this judgment the State appealed and the defendants answered the appeal.
Before proceeding we wish to commend counsel for the State for having prepared and annexed to their brief a statement in the nature of a recapitulation showing each item under the heading of “Item” involved in the expropriation and under the heading of “Demand, See Answer” is the defendants’ evaluation of that item as shown by its answer. Then next are listed the names of each appraiser with his evaluation of that item under his name with the page number of the transcript. In addition the State had furnished to the defendants a statement showing each item they considered and the value thereof in arriving at the total amount of $67,000 that they offered the defendants. These amounts are contained on this recapitulation under the heading “Statement”, and next, under the heading of “Award by Trial Court” we have the award of the lower court. Next on this statement or recapitulation is “Comparison of Award with Statement,” and under this heading is the difference if any in the award of the court with the amount offered by the State. For example, we will take the first item on the State’s recapitulation as follows:

*352

*353 We hope that this form will he followed in future expropriation suits.
The State on this appeal lists the following specifications of errors:
“The Trial court erred in the following particulars, in the trial and in rendering its decision in this case:
“1. Failed to base its decision on the evidence before it.
“2. Included in its award the value given by the defendants to movable and cold storage refrigerators.
“3. Included in its award rip rap and docks not upon the defendants’ property which was expropriated.
“4. Arbitrarily added 50% to the State’s appraisal of the value of the expropriated land without any evidence to support it.”
The defendants complain only of: “ * * * (1) The item of Awnings; (2) The item of severance damages; and (3) The item of land value.”
We will proceed with the State’s specification of errors.
We have carefully considered and read the complete record herein and find that the lower court, in addition to hearing the witnesses testify in this case, has also carefully read the entire record as shown by her detailed consideration in her written reasons for judgment of each item and the testimony pertaining thereto. There is evidence to support the lower court’s decision in every respect.
As to specification of error No. 2 by the State, let us examine the written opinion of the trial judge as to why she included in her award the value of the cold storage refrigerators or walk-in coolers. The lower court stated:
“The walk-in freezer and walk-in cooler were valued at $1200.00 and $500.00 respectively by both of defendants’ appraisers. These items were not considered in the valuation given by the Highway Department. Mr. Derbes considered the items to be movable property due to the fact he said that they were old truck bodies resting on loose wood cross members (T. 96). Mr. Farris stated that they were not attached to any building nor to each other. From the description of these items they were not merely truck bodies from which the wheels had been removed, but old truck bodies which had been utilized in building these walk-in refrigeration units, to which insulation had been added and compressor units installed. Under these circumstances the court does not believe they would be classed as movable but as a part of the real estate, and will allow their value of $1700.00.”
The testimony as to the walk-in freezer and cooler is very meager. Mr. Derbes testified that they were resting on loose wood cross members, however, he added that he did not know whether they were also on piling. We see no reason to go into a long dissertation on the distinction between movable and immovable property as neither brief contains any law on the subject. The mere fact that the freezer and cooler could have been dismantled or unattached from its foundation, placed on a truck and moved, is not sufficient for the State’s contention. Large houses are removed from their foundations and hauled in this day and time. These two articles were an integral part of the restaurant and bar business and from the record we cannot say nor do we believe that the trial court was manifestly erroneous in classing them as a part of the real estate.
As to Specification of Error No. 3, it is clearly shown by the record that the rip-rap and bulkheads were an absolute necessity to the preservation of defendants’ land, otherwise he would never have spent so much money installing this necessity. As far as the twenty-foot and fifty-foot docks are concerned, the State’s own appraisers, particularly Mr. Derbes, considered that they were expropriating the *354 whole property instead of estimating the severance damage on the remaining property. His reasons, as well as those of the trial judge, were that the expropriation of the 3.527 acres fronting on U. S. Highway 51 left a very narrow strip to the rear of this property which was under water, and that the severance damage to the remaining property would be equal to the value of that property. The recapitulation statement of the State shows the evaluation of the twenty-foot dock as well as the fifty-foot dock, both of which are fully discussed in the opinion of the trial court.
As to the State’s Specification of Error No. 4 that the lower court arbitrarily added 50% to the State’s appraisal of the value of the expropriated land without any evidence to support it, we find in the record that Mr. Derbes used as comparable sales of property .in the Strader subdivision which is located from one to three miles north of the subject property and clearly, from the record, much less valuable on a front foot or any other basis. Mr. Derbes found the average frontage value of the Strader property to be $21 to $23 per foot, and being of the opinion that the Allen property was twice as valuable he fixed the value at approximately twice the value of the Strader footage and arrived at a figure of $21,000 for the defendant’s property unimproved and $25,000 considering the fill and the shells, however, the value of the fill and the shells was estimated and awarded separately.
In speaking of the value of the defendants’ property as compared to the Strader property several miles to the north without the advantage of a frontage on Lake Mau-repas, he stated: “It becomes a matter of judgment when you make these adjustments when you consider the Allen property had this better advantage, the monopolistic advantage. It could grab that customer coming from Baton Rouge or LaPlace first when he went over that bridge. How much that played into the picture, I gave them as much benefit of the doubt as I could, based on this sale and the other sale.”
The District Court believed that the defendants’ property was worth three times as much per front foot as the Strader property and gave her reasons therefor, and we believe she was correct.
Mr. Derbes testified to sales of the Stra-der property ranging from $21 front foot on Highway 51 to $25 per front foot. Based upon a frontage of 487.97 feet or 488 feet, and the award of $32,600, the District Court used a value of slightly more than $66 per front foot. It must also be remembered that the appraisers for the defendants valued the land at $100,000. Mr. Womack estimated it two ways. One was for a developer to divide the property, which he thought to be worth $50,000, with the expectancy to the developer of making another $50,000. The other was to divide approximately an acre fronting on the lake and canal into marinas. The District Judge, however, based her judgment more on what she believed to be an honest value per front foot as compared to the Strader property. We will not disturb her award on the record.
Counsel for the State complain in their brief of the lower court’s award on the main building of $36,635. It is contended that this value does not accord with the testimony of any of the experts. We cannot agree with this contention for the record reveals that Mr. Derbes testified that the first floor of the main building contained 3,918 square feet and the upstairs contained 490 square feet. He estimated the replacement costs of the 490 square feet upstairs of $7 per square foot or $3,430, and the replacement cost of the 3,918 square feet in the downstairs restaurant and bar at $9 per square foot or $35,262, giving a total replacement cost of the real estate only for the main building and improvements of $38,692. He estimated the deterioration of the building at 15% or $5,804, giving a market value to this main building of $32,888. On the other hand Mr. Womack estimated the replacement value of the first floor area at more than $10 per square foot and the upstairs area at $8 per square *355 foot. The Court did not accept the precise estimate of either expert but fixed the replacement value of the downstairs area of 3,918 square feet at $10 per square foot or $1 more than the State’s expert, Mr. Der-bes, and $2 less than the defendants’ expert, Mr. Womack. The lower court also fixed the replacement cost of the upstairs 490 square feet at $8 per square foot, which was $1 more than the estimate of the State’s expert Mr. Derbes, and was in accord with Mr. Womack’s estimate of $8 per square foot for replacement. Mr. Womack did not depreciate the building but the court accepted the 15% depreciation by Mr. Derbes, the State’s expert and arrived at a market value of $36,635.
While the State complains as to other values, we believe the written reasons by the trial judge amply explain and support the value placed by her upon such contested items.
The defendants contend that the lower court committed manifest error in its value as to (1) the item of awnings, (2) the item of severance damage, and (3) the item of land value.
As to the item of awnings we believe on this record that the only amount or value that could be given was $60 as fixed or awarded by the trial judge. The record shows clearly that a mistake was made on the statement furnished by the Department of Highways to the defendants in that they had two awnings at $800 when as a matter of fact it is shown that this valuation was or should have been listed as on the flow well. Mr. Derbes’ testimony makes this clear and the Court in its written reasons for judgment states very precisely how she arrived at the item of $60.
As to defendants’ complaint that the trial judge should have awarded $7,500 for severance damages to the remaining property, we find no testimony in this record to substantiate such a contention. There is no testimony placing a value upon the remaining property before or after the taking and it is therefore impossible to arrive at severance damages. The only testimony is by Mr. Farris to the effect that severance damages to the remaining property amounted to $7,500. His explanation was totally insufficient to support such an amount in law.
As to complaint No. 3 with regard to the item of land value, this is completely based upon the fact that Mr. Derbes, the State’s expert appraiser, made two appraisals and in the first he covered 2.565 acres and the second, 3.527 acres for which he gave the same value of $21,000. It is clear that this is true, however, he explains this valuation by stating that he considered the taking of the 2.565 acres as having the effect of taking all of the property belonging to the defendants, even though they were actually left with a small piece of land to the west and rear of the land expropriated. Mr. Derbes stated that he included in the part taken “the severance calculations for that remainder, it being my understanding that there was no access to that. As I say, technically, the first appraisal is in error. It should have been less for the land and an amount for severance at the end of the report, which would have equaled the market value. In other words, I said that that land had no economic use afterwards. I was paying them for it anyway even though it wasn’t in the actual taking.” The District Court followed this reasoning in her award for value of the land.
It would be possible for this court to remand this case for the specific purpose of proving the severance damage if any and deducting it from the award made by the District Judge for the value of the land taken. However, we see no real justification for such action and prefer to accept the explanation of Mr. Derbes upon which the lower court based its award that he considered the remainder of the property of no economic use afterwards and gave full value as severance damages which was included in the actual value he placed upon the property. After Mr.' Derbes had given such testimony, neither the State nor the defendant saw fit to question him pointedly *356 as to what he considered severance damage if any to the remaining property and the value of the property taken or expropriated which, as he testified, would have constituted the market value.
We believe that the above and foregoing, together with the written opinion of the trial court will answer all arguments made by the State and the defendants in this case, and being of the further opinion that the judgment of the lower court is correct as shown by the written reasons, we adopt said reasons as our own and we quote:
“In this proceeding the Highway Department has expropriated an area totalling 3.527 acres as a portion of state project 17-02-27 on the Ponchatoula-Manchac portion of U. S. Highway 51 designated on the plat as Tract 8-21, and owned by Mr. and Mrs. James Frank Allen.
“The property is bounded on the east by U. S. Highway 51, on the south by Lake Maurepas and on the west by the borrow canal which was made by the Highway Department in a former project on the same highway. The present taking is a solid block of land fronting 487.57 feet on Highway 51, approximately 367 feet on the lake, an irregular 400 feet on the borrow canal. The north boundary measures 386.94 feet from which has been taken a block measuring 100 x 150 feet which now belongs to the John Heberts and which is designated on the plat as Tract 8-5.
“The entire tract belonging to defendants consisted of Lots 1, 2, 3, and 4 of Block B, Jones Island Realty Co., Subdivision, all of which was included in this taking except the western-most portion of Lot 4 which is a strip approximately 43 feet in width along the entire length of Lot 4 along the edge of the borrow canal. This strip was at the time of the taking entirely under water and actually formed a portion of the water way which merged into the borrow canal.
“A total of $67,000.00 for this tract and all improvements was offered by the Highway Department and deposited in the registry of the Court. There were two appraisers for the Highway Department, Mr. Derbes and Mr. Deano, both of whom arrived at a total of approximately $67,000.00, although their valuations of individual items differed.
“The defendants presented two appraisers, Mr. Womack and Mr. Farris, and also offered a typewritten sheet purportedly containing a breakdown of valuations of the various items placed on the improvements by the Highway Department. This sheet was identified by Mrs. Allen as having been received from the Highway Department representative, Mr. Gordon Arnette, who first negotiated 'with the Allens in connection with this right-of-way. This offering was objected to as containing so many inter-lineations and notations as to make it utterly useless. However, the court admitted the document subject to the objection on the identification of Mrs. Allen that the typewritten portion was the same as received by her from Mr. Arnette. This break-down also came to the total figure of $67,000.00 although Mr. Derbes stated that the item shown thereon as an $800.00 value of the awnings was a typographical error, and that there was omitted from this list the item of $800.00 for the flow well and water system. Otherwise, Mr. Derbes indicated that the other items checked out correctly.
“On this sheet which was marked for identification 'Allen 1/ is noted an item of $1400.00 for a boat lift. The defendants, Mr. and Mrs. Allen, have withdrawn from the amount deposited in the registry of the court, the sum of $65,600.00 and have left on deposit the sum of $1400.00 which they say represents the amount for the boat lift which they contend belongs to John Hebert and not to them.
“On the expropriated property are situated a number of improvements the market value of which will be taken into consideration separately, and also defendants’ claim for damages to the portion of the tract that remains, as well as the value of the tract taken.
*357 “The main item of improvement is the building which was used for a sea-food restaurant and bar, and which had living quarters on the second floor. This was constructed mainly of cypress built on creosoted pine piling foundation, of Cape Cod style architecture. It was described by defendants’ appraisers as measuring 40' x 80' and as containing ‘3840 sq. ft. on each floor,’ and they placed a value of $10.00 a sq. ft., on the entire building which they figured as making a total of $38,400.00.
“The Highway appraiser Mr. Derbes gives the measurements as 80' ll"x48/ 5", or a total of 3918 sq. ft., on the ground floor. Being Cade Cod style the second floor had less floor space, and was described by Mr. Derbes as containing 490 sq. feet.
“Considering the fact that this was a large restaurant, necessarily having a large kitchen and requiring a number of rest rooms, all of which would have more expensive plumbing and other installations than the ordinary residence, this court is of the opinion that the ground floor estimate of $10 per sq. ft. replacement cost would be reasonable. Defendants’ witness, Mr. Wo-mack, testified that he figured the second floor at $2.00 less than the first floor. Therefore the court is going to figure the second floor at $8.00 a sq. ft., which would make a total for both floors of $43,100.00 replacement cost. The house was built in 1952 and had kept in good repair. Therefore, the court will consider the minimum depreciation of 15% as reasonable, leaving a total for this improvement of $36,635.00.
“The next item is a residence formerly used as a home by the defendants, but which was at the time of the taking used as a tenant house. This was constructed by cypress and long leaf pine with bath, testified by defendants’ witnesses as containing 960 sq. ft., but having a measurement as given by the Highway appraiser, Mr. Derbes of a total of 721 sq. ft., in the main house figured by actual measurements, with the front porch having replacement value of ~i/z or an equivalent of 119 sq. ft., and the rear porch having a replacement value of 40% or an equivalent of 33 sq. ft., which would figure for the entire area 873 sq. ft.
“Mr. Derbes figured $6.25 a sq. ft. replacement with 50% depreciation, while defendants’ appraisers both figured $5 a sq. ft. depreciated value which would be the equivalent of approximately ¡$7.50 replacement with one-third depreciation. This house was built in 1942 according to Mrs. Allen. This Court, is of the opinion that the $7.50 replacement cost with one-third depreciation for this type of structure would be nearer in line with the market value at the time of the taking. Therefore the court takes the 873 sq. ft. of floor space as figured by Mr. Derbes and the $5.00 depreciated value as the market value of the structure as of the date of taking, making $4,365.00.
“The servants’ house was valued by Mr. Derbes at $630.00 and by the other Highway appraiser Mr. Deano at $1,000.00. Defendants are claiming $700.00, and in view of the Highway appraisers’ valuations, the court believes that the $700.00 figure is reasonable.
“There was a small outhouse valued by the Highway appraisers as having a value of $30.00, but which the defendants have asked no remuneration.
“The flow well alone was valued by both of defendants’ appraisers at $500.00. This flow well with the water lines and connections to all the buildings was valued by both of the Highway appraisers at $800.00. Therefore, the court believes defendants’ claim of $500.00 for this item is justified.
“The two butane gas tanks and connections were included in the total of the improvements to the buildings by Mr. Derbes, but they were valued separately by all the other appraisers. The defendants’ appraisers both -gave the value as $400.00 for both, and Mr. Deano for the Highway placed the value at $650.00. Therefore, the court believes the defendants’ valuation of $400.00 is justified.
*358 “The walk-in freezer and walk-in cooler were valued at $1200.00 and $500.00 respectively by both of defendants’ appraisers. These items were not considered in the valuation given by the Highway Department. Mr. Derbes considered the items to be movable property due to the fact he said that they were old truck bodies resting on loose wood cross members. (T. 96.) Mr. Farris stated that they were not attached to any building nor to each other. From the description of these items they were not merely truck bodies from which the wheels had been removed, but old truck bodies which had been utilized in building these walk-in refrigeration units, to which insulation had been added and compressor units installed. Under these circumstances the court does not believe they would be classed as movable but as a part of the real estate, and will allow their value of $1700.00.
“There were four items about which Mr. Derbes and the two defendants’ appraisers agreed:
“Doghouse $160.00; fence $25.00; trees and shrubs $250.00; poultry yard $110.00; making a total of $545.00 for these miscellaneous items.
“As to the awnings, these are listed separately as costing $800.00 (T. 32) while Mr. Derbes states that these awnings added to the value of the main building by $60.00 (T. 96). Mr. Womack stated he concurred with the Highway Department in all these items, including the awnings, but it is evident that in saying this he is referring to the Highway Department figures as contained in exhibit marked ‘Allen 1,’ since he goes on to testify as to the cost of these awnings as being $800.00. The aerial photographs show there are two small awnings, one over each of two of the entrance doors. Mr. Derbes is the only one who testified as to the amount these awnings enhanced the market value of the building. Therefore, the court will take this figure as correct and will allow $60.00 therefor.
“Defendants had constructed a wall of broken rock referred to as rip rap along the water edge of the lake and along part of the borrow canal at the lake end. This is for the purpose of keeping back the water and holding in the original land and the fill. As shown by the map and by the aerial photographs this seems to be extensive, and is a very necessary improvement to the area. Defendant is asking $4,000.00 and this figure is verified by both of defendants’ appraisers. Mr. Womack further testified of having had experience with such work and fixes the value at $4,000.00 which this court is going to accept for this rip rap, which includes the bulkhead along part of the lake side.
“For the shaping and fill defendants are claiming $2300.00. In view of the valuation of $2500.00 placed on this by Mr. Deano for the Highway Department the court believes that defendants’ claim for this is reasonable.
“The shells for the roadways, parking areas and boat landings, everybody seems to be agreed that this is properly valued at $2,000.00 (T. 32, 47, 128.)
“While there were two docks, defendants claim only one, which is the large heavy duty one leased to the Dietrick Oil Company for $100.00 per month. This was used by the oil company for unloading oil barges on to trucks. While the entire revenue from the oil company was $100.00 per month or $1200.00 per year, this rental is not for the dock alone but for the boat landing, approaches and roadway and other conveniences of the location. These other conveniences have been considered in the price of the fill and the shells. The value of this dock alone was valued by Mr. Deano for the Highway department at $800.00 (T. 128) and the Court believes that this valuation is fair.
“There was another, smaller dock which was valued by Mr. Derbes at $300.00 and by Mr. Deano at $400.00, but which was not valued by defendants’ appraiser Mr. Farris because he considered that it was still on defendants’ property, it being built entirely *359 over the waterway that still belongs to defendants. The value of this dock, as such, is not being claimed by defendants. Nevertheless, it will be considered hereinafter in connection with the damage to the remaining property.
“The boat lift was located at the end of the smaller dock. It is listed on the exhibit marked ‘Allen 1’ as valued at $1400.00. While the Department’s counsel objected to this offering, Mr. Derbes pointed out the error in the item of the awnings and the fact that the artesian well was not shown on it, but stated that the other items apparently checked out. In the brief of defendants’ counsel it is stated that this boat lift belonged to Mr. Hebert and not to the Allens. For this reason this amount was not withdrawn by the Allens from the registry of the court and the court is now asked to decree that this boat lift is the property of Mr. Hebert. However, Mr. Hebert is not a party to this suit. This item was attached to the real estate belonging to the defendants and any understanding between them and Mr. Hebert would be a personal transaction between them. For the foregoing reasons, this boat lift is valued herein at $1400.00, and any disposition thereof is a personal matter between defendants and Mr. Hebert.
“Value of the land expropriated:
“There is considerable difference of opinion as to the value of the land alone. It must be kept in mind in fixing this value, that it is for the land alone, before the shaping, fill, shells, rip rap and bulkhead, etc., were in place, that we are now concerned, since we have already taken these other items into consideration separately.
“While Mr. Womack placed a value of $100,000.00 on the entire land area taken, he based this on the value of a tract located some six or more miles by water, around the lake shore, from the subject property and which the owner is developing into a ‘marina’ and selling off 25 x 50 foot lots at $1500.00 each. However, it is in evidence that this man purchased 12 acres for the price of $40,000.00 for the purpose of this development. Mr. Womack further testified that the subject property, if sold to a developer in a block, the developer would probably pay only $50,000.00 and expect to make a 50% profit on the investment. Mr. Womack testified further that that portion of this property which borders the lake and the canal could be made into 36 lots measuring 25 x 50 feet, which would sell for $1500.00, totalling $54,000.00. If the developer for such a project would expect 50% profit this would make this land worth $27,000.00 on the market.
“This entire tract in 1939 when the Allens purchased it was nothing but mud and water according to Mrs. Allen. A large portion of it is still swampy, the area around the tenant house being low enough so that this house is on.stilts with a catwalk to the restaurant area.
“Shaping and fill and shells that would be necessary to develop this portion into something suitable for a motel, is very expensive, as shown by previous valuations herein. This would necessarily have to be taken into consideration by anyone purchasing the remaining area for such purposes.
“The location of this property with navigable water on two sides and a main national highway on a third side seems to be its main value. It is what Mr. Derbes has termed ‘monopolistic’ in that there is nothing quite to compare with it anywhere near.
“While the Strader subdivision has been offered as a comparable, it is located from one to three miles north of the subject property, as estimated by the various witnesses, and it does not have the lake frontage. This would be a considerable distance by boat and would make this property much less valuable as a ‘marina’ or for fishing camps. It would be perhaps more comparable although less valuable as a location for a sea food restaurant, bar, or motel. *360 While the Department’s appraisers fixed the subject property as twice as valuable as the Strader subdivision, the court, considering- its extremely advantageous location, will fix it at three times the value per highway front foot, which would make the lane value $32,600.00.

"Damage to the remaining property:

"The property remaining to defendants is entirely under water which is 10 to 12 feet deep. It was entirely under water at the time of this taking.
"While there was considerable discussion about access to this remaining property, the Department attorney contending that there is access over the public highway property which can be traversed by any vehicles. However, the court agrees with all the witnesses, including Mr. Derbes. Mr. Derbes testified that in his appraisement for the Highway Department, both in his first appraisement and in the second and final appraisement which later appraisement was for a greater area than the first, he considered the taking in both instances to amount to the taking of the entire tract.
“Therefore, in making the evaluation of this tract the court is going to consider that this taking amounts to taking the entire property. The value of this remaining tract, which is under water and forms a portion of the navigable waterway on the west, has been included in the total valuation of the tract. It was taken into consideration of the highest and best use for the west portion of the property as a ‘marina.’
“Therefore, the only damage to the remaining property left to be valued is the small dock located there and which has been valued by Mr. Derbes at $300.00 and by Mr. Deano at $400.00, which figure the Court will split and place the value at $350.00.
“A summation of the foregoing evaluations is as follows:

“For the foregoing reasons the court renders judgment in favor of defendants, Mr. and Mrs. James Frank Allen, and against the plaintiff, State of Louisiana, through the Department of Highways, in the full sum of $88,355.00 less the amount of $67,000.00 deposited in the registry of the court on December 18, 1958, making a total balance due of $21,355.00, together with 5% interest on said balance from December 18, 1958 until paid
"All costs are to be paid by the plaintiff, State of Louisiana through the Department of Highways.”
Affirmed.